IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:17-cr-00055 |
| v. ) | |
| ) | |
| TIMOTHY LEE BARNHART, ) | By:   Michael F. Urbanski |
| Defendant-Petitioner ) | Chief United States District Judge |

MEMORANDUM OPINION

This matter comes before the court on a motion for compassionate release filed by Timothy Lee Barnhart pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 83. The Federal Public Defender was offered an opportunity to file a supplemental petition but declined to do so. ECF Nos. 85, 87. The government filed a response to the motion, to which Barnhart has replied. ECF Nos. 90, 93, 94. For the reasons stated herein, the court will **DENY** Barnhart's motion for compassionate release.

**I. Background**

On September 7, 2017, Barnhart was charged with one count of distribution and receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) (Count 1) and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) (Count 2). On February 11, 2019, Barnhart pled guilty to both counts without a plea agreement. ECF No. 46. On May 16, 2019, Barnhart was sentenced to concurrent terms of 84 months on each count to be followed by concurrent 5-year terms of supervised release. J., ECF No. 74. Barnhart currently is incarcerated at Federal Correctional Facility Elkton and has a projected release date of January 31, 2025.

1

## II. Compassionate Release

Barnhart seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that he is entitled to compassionate release based on his medical conditions and his need to care for his elderly mother. The compassionate release statute as amended by the First Step Act of 2018 authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Accordingly, Barnhart's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their

2

initial request to file a motion in the district court." Id. at 131. Barnhart submitted requests for compassionate release to the warden of FCI Elkton on April 5, 2020, and April 18, 2020, and the warden denied his requests on May 1, 2020. ECF No. 83-1 at 4–6. More than 30 days later, on May 4, 2022, Barnhart filed his motion for compassionate release. ECF No. 83. The government does not contest that Barnhart has exhausted his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A). Resp., ECF No. 90 at 4–5. Accordingly, the court finds that Barnhart has satisfied the statute's exhaustion requirement.

The court must next consider whether it should reduce the term of imprisonment. The United States Sentencing Commission recently amended the section of the guidelines that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL §3E1.1 (NOV. 2023) ("USSG" or "guidelines"). The revised guidelines will be applied to Barnhart's arguments.

### A. Medical Circumstances

A defendant may show an extraordinary and compelling reason for a sentence reduction based on medical circumstances when he can demonstrate the following:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or

3

> (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

USSG § 1B1.13(b)(1)(A)–(C). Barnhart describes several ailments and conditions which are troublesome to him, but none of them rises to the level of "a serious physical or medical condition" or cause "a serious functional or cognitive impairment," as contemplated by the guidelines.

Barnhart first asserts that he has been treated for a thyroid condition for the past 25 years and currently is being treated with Synthroid, or Levothyroxine. Although his lab results have varied over the years, including while he has been incarcerated, results from the most recent lab tests indicated that his thyroid levels were within normal limits. Med. Rs., ECF No. 90-3 at 55, 63. Barnhart asserts that his thyroid condition leaves him with very low energy, shortness of breath, and dizziness, and negatively affects his cognitive skills and ability to speak. ECF No. 83 at 5–7. However, the prison medical records submitted by Barnhart and the government do not indicate that Barnhart ever complained to prison medical staff about any of these conditions. Moreover, the doctor who treated Barnhart for his thyroid issue prior to his incarceration opined in a letter that he was "certain that these minor fluctuations in your thyroid profile does [sic] not do much physiologically to your body or mind." Letter, ECF No. 83-1 at 2. At Barnhart's most recent chronic care clinic encounter on February 17, 2022, he denied having balance issues or shortness of breath on exertion and it was noted that his speech was clear and appropriate. Also,

4

his hypothyroid condition was described as "stable with Levothyroxine." Med. Rs., ECF No. 90-3 at 5–6.

Based on the medical records, the court concludes that although Barnhart does suffer from hypothyroidism, there is no indication that the thyroid condition is a serious physical or medical condition or is causing him serious functional or cognitive impairment. Therefore, it does not present an "extraordinary and compelling" reason to reduce his sentence.

Barnhart next complains that for the past 25 years he has been treated for a chronic sleep disorder and very frequent migraine headaches. He claims that he has never been able to sleep more than two hours at a time and that the prison environment is so loud that he cannot sleep at all in the facility. He says that his lack of sleep negatively affects his cognitive abilities and impairs his ability to "speak fluently" and "choose [his] words properly." Mot, ECF No. 83 at 8–9. He submitted a letter from a neurologist who treated him before he was incarcerated confirming that Barnhart suffers from chronic insomnia and headaches that have been resistant to treatment. Letter, ECF No. 83-1 at 1. Barnhart asserts that when he told prison medical staff about his insomnia and headaches, they recommended that he buy Naproxen from the prison commissary to treat his headaches. Mot., ECF No. 83 at 8.

Notwithstanding the letter from Barnhart's outside physician, there is no mention of headaches or insomnia in the prison medical records. Also, in Barnhart's most recent chronic care clinic encounter the medical provider noted only Barnhart's stable high cholesterol and low thyroid conditions. Barnhart also complained of constipation and vision changes and requested an ophthalmology consultation. Med. Rs., ECF No. 90-3 at 5. He denied having headaches and on examination it was noted that his speech was clear and appropriate. Id. at 5–6. Therefore, it

5

does not appear that Barnhart's headaches or insomnia are a serious physical or medical condition or are causing him serious functional or cognitive impairment.

Barnhart further complains that after testing positive for COVID-19 he has sustained damage to his eyes in the form of "floaters," which appear as tiny hair-like images in his field of vision.[1] He claims that the floaters make it seem like he is looking through lace and the condition negatively affects his ability to read. Mot., ECF No. 83 at 9. Barnhart was seen by the optometrist at the prison facility, who told him that COVID-19 most likely inflamed and adversely affected his retinas and caused the floaters to appear. Id. at 10. Prison medical records confirm that on March 4, 2021, Barnhart reported seeing floaters in both eyes. An examination showed a grossly normal retina with vitreous floaters. It was further noted that no treatment was needed. Med. Rs., ECF No. 83-1 at 24–25.

On April 20, 2021, Barnhart again saw the optometrist, who acknowledged that Barnhart was seeing more floaters and explained to him that there was no retinal involvement. Id. at 28. An eye examination on May 3, 2022, was within normal limits and the optometrist noted that Barnhart reported fewer floaters than the previous year. Med. Rs., ECF No. 90-3 at 2. At the eye examinations, Barnhart sometimes asked for stronger reading glasses, and sometimes asked for weaker reading glasses so that he could better see a computer screen. See Med. Rs., ECF No. 83-1 at 24, 27; ECF No. 90-3 at 2. Based on the medical records, the floaters do not appear to rise to the level of a serious physical or medical condition and do not cause Barnhart to suffer a serious functional or cognitive impairment.

---

[1] "Floaters usually happen because of normal changes in your eyes. As you age, tiny strands of your vitreous (the gel-like fluid that fills your eye) stick together and cast shadows on your retina (the light-sensitive layer of tissue at the back of the eye). Those shadows appear as floaters." https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/floaters (last viewed Nov. 27, 2023).

6

Barnhart also has a "hammer toe" on his left foot, which is documented in the prison medical records. Med. Rs., ECF No. 83-1 at 29, 32–33, 36. An x-ray showed severe osteoarthritis of the first MTP joint and hammertoe deformity of the second through fifth toes. Id. at 36. Barnhart was provided "medical shoes" in July 2021 and restricted to no work requiring safety shoes, but no other restrictions were imposed. Med. Rs., ECF No. 90-3 at 51. Medical providers noted on several occasions that Barnhart had a normal gait. Med. Rs., ECF No. 83-1 at 8; ECF No. 90-3 at 16, 21. Nothing in the record indicates that Barnhart's painful toes are a serious physical or medical condition or result in serious functional or cognitive impairment, and thus the condition does not warrant a reduction in his sentence.

Barnhart also argues that he is entitled to compassionate release based on pain and discomfort in various joints. He claims that because of a motorcycle accident he had more than 30 years ago he has a herniated disc at his C5-C6 vertebrae that causes pain in his neck and arms. Mot., ECF No. 83 at 12–13. An x-ray of his cervical spine showed mild multilevel facet arthropathy, multilevel intervertebral foraminal narrowing which was moderate at C3-C4 and C5-C6, and mild to moderate multilevel disc space narrowing, worst at C5-C6, with associated tiny ventral endplate osteophytes and uncovertebral hypertrophy at these levels. Med. Rs., ECF No. 83-1 at 20. Barnhart also broke his jaw in the motorcycle accident and now cannot open his mouth very wide without pain. Mot., ECF No. 83 at 15.

In addition, Barnhart claims he has a "burst bursa sac" in his left elbow that sometimes causes sharp pain and an inability to move his arm. Also, he has arthritis in both thumbs which make it painful to grip or push on a flat surface. Mot., ECF No. 83 at 12–13, 15. There is no reference in the prison medical records to either of these impairments.

Barnhart also complains of knee pain. An x-ray showed a 5-millimeter loose body in the anterior left knee joint space and tricompartmental osteoarthritis in the left knee. Med. Rs., ECF No. 83-1 at 3. Barnhart requested a bottom bunk pass for his knee pain, id. at 8, and his request was granted. Med. Rs., ECF No. 90-3 at 51. Finally, the medical records indicate that Barnhart complained of bilateral groin pain, but x-rays of his pelvis and lumbar spine did not explain the pain and it was attributed to abdominal strain for which conservative treatment was recommended. Med. Rs., ECF No. 83-1 at 37–38; ECF No. 90-3 at 20–21.

In sum, although Barnhart has several documented medical conditions, none of them can be considered a serious physical or medical condition and it does not appear that they cause him serious physical or cognitive impairments. To the contrary, no restrictions have been imposed on his activities, and he works as an orderly in the unit. Med. Rs, ECF Nos. 90-3 at 51–54; 90-4 at 2. Barnhart, like many people both in prison and out of prison, has aches and pains and experiences discomfort from various ailments. However, none of his impairments, whether considered individually or in combination, rise to the level of an "extraordinary and compelling" circumstance warranting a sentence reduction under 18 U.S.C. § 3582(c)(1). Therefore, his motion for compassionate release is **DENIED**.

### B. Caring for Elderly Parent

Barnhart also argues that he is entitled to a sentence reduction to care for his elderly mother. Under the revised guidelines, a defendant may be able to show an extraordinary and compelling reason for a sentence reduction upon producing evidence that the defendant's parent is incapacitated and the defendant would be the only available caregiver for the parent. USSG § 1B1.13(b)(3)(C) (Nov. 2023). However, an internet search reveals that, unfortunately, Barnhart's

8

mother died in January 2023.[2] Therefore, Barnhart's motion for compassionate release to care for his mother is **DENIED as moot.**

### III. Challenges to Underlying Conviction and Sentence

Barnhart also raises two challenges to his underlying sentence. First, he argues that he should not have been convicted of "receiving" images of child pornography. He claims that the definition of "receiving" images predates the internet and contemplates receipt of images from one person to another via a hand-to-hand exchange or use of the postal service or other carrier. Mot., ECF No. 16. He asserts that now, child pornography is readily available to anyone casually searching images on the internet and that "finding displays of free electronic images does not require the direct interaction of two people." Mot., ECF No. 83 at 16. He claims that he did not "receive" child pornography but when he ran benign Google searches for actresses and the movies they made, "an Algorithm running in the background at Google" loaded webpages it considered related to his search. Reply to Government's Resp., ECF No. 94 at 5. Barnhart also argues that his convictions for one count of distribution and receipt of child pornography and one count of possession of child pornography violate the Double Jeopardy Clause of the Constitution. Mot., ECF No. 83 at 17.

Barnhart's challenges to his underlying conviction and sentence cannot be brought in this compassionate release motion. United States v. Ferguson, 55 F.4th 262 (4th Cir. 2022). In Ferguson, the defendant was sentenced to 765 months of imprisonment for drug trafficking and possession of a firearm in furtherance of a drug trafficking crime. The firearm conviction carried a mandatory minimum 30-year sentence under 18 U.S.C. § 924(c). Ferguson, 55 F.4th at 265. Ferguson filed a motion for compassionate release in the district court, arguing, among other

---

[2] https://www.tributearchive.com/obituaries/27105503/cecil-christine-barnhart (last viewed Nov. 28, 2023).

things, that he should not have been sentenced to the mandatory minimum sentence on the firearm charge because the indictment did not allege that he possessed a silencer. Id. at 266. He also argued that the district court failed to instruct the jury that possession of the silencer was an element of the offense, the government failed to inform the defendant of the applicable penalty on one of his counts at arraignment, the guidelines range was calculated incorrectly, and his trial counsel was ineffective for several reasons. Id.

The district court denied the motion for compassionate release, finding that Ferguson's arguments were in substance a collateral attack on his convictions and sentence and noting that the proper vehicle for bringing such a challenge was a 28 U.S.C. § 2255 motion. Id. at 269. The court held that, as a matter of law, arguments challenging the validity of a conviction or sentence could not constitute an extraordinary and compelling reason warranting compassionate release. Id.

The Fourth Circuit affirmed, finding that despite the defendant's argument that his "unlawful conviction" was an extraordinary and compelling reason for compassionate release, his attempt "to collaterally attack his convictions and sentence via a compassionate release motion ignore[d] the established procedures for doing so." Id. It is well-established that the exclusive remedy for challenging a federal conviction or sentence after the conclusion of the time for a direct appeal is a motion brought under 28 U.S.C. § 2255. Id. Only if § 2255 appears inadequate or ineffective may a federal prisoner seek a writ of habeas corpus under § 2241. Id.

The court distinguished the facts and procedural posture of Ferguson from that of the defendants in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), and United States v. Zullo, 976 F.3d 228 (2d Cir. 2020):

> Appellant compares the arguments in his compassionate release motion to those made by the defendants in United States v. McCoy,

10

>981 F.3d 271 (4th Cir. 2020), and United States v. Zullo, 976 F.3d 228 (2d Cir. 2020), which we cited favorably in McCoy, but those comparisons are inapt. The defendants in McCoy argued that a change in the sentencing law that occurred after their sentencings (but did not apply retroactively) merited a reduction in their sentences to conform to that change. 981 F.3d at 275. And the defendant in Zullo argued that he qualified for a sentence reduction pursuant to § 3582(c)(1)(A) due to "his (apparently extensive) rehabilitation," his "age at the time of the crime[,] and the sentencing court's statements about the injustice of his lengthy sentence." 976 F.3d at 238. By contrast, the arguments Appellant makes in his § 3582(c)(1)(A) motion constitute quintessential collateral attacks on his convictions and sentence that must be brought via § 2255. Appellant's arguments are clearly different in kind from the arguments made by the defendants in McCoy and Zullo because they would require the district court, in determining whether "extraordinary and compelling reasons" for compassionate release exist, to evaluate whether Appellant's convictions -- and particularly his conviction on Count Seven -- were valid. "Those convicted in federal court are required to bring collateral attacks challenging the validity of their judgment and sentence by filing a motion to vacate [their] sentence pursuant to 28 U.S.C.[ ] § 2255." In re Vial, 115 F.3d 1192, 1194 (4th Cir. 1997) (en banc).

Ferguson, 55 F.4th at 271.

Like Ferguson, Barnhart is challenging his conviction and sentence, and he cannot do so in this motion for compassionate release. Rather, any challenge to his conviction and sentence should have been brought via direct appeal, or via a motion for habeas corpus relief. Accordingly, his request for compassionate release based on his arguments that he did not "receive" child pornography and that his conviction violated the Double Jeopardy Clause of the Constitution is **DENIED**.

### IV. Conclusion

For the reasons stated, the court is unable to find that Barnhart has shown that he has an "extraordinary and compelling" reason that would entitle him to a sentence reduction under 18

U.S.C. § 3582(c)(1)(A).[3] Accordingly, the court **DENIES** Barnhart's motion for compassionate release, ECF No. 83. The Clerk is **DIRECTED** to send a copy of this opinion and the accompanying order to Barnhart.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: November 29, 2023

Michael F. Urbanski
Chief United States District Judge

---

[3] Because the court finds that Barnhart has not shown an "extraordinary and compelling" reason for granting his motion for a sentence reduction, the court will not address the 18 U.S.C. § 3553(a) factors. See United States v. Malone, 57 F.4th 167, 174 (4th Cir. 2023) ("[I]f the district court has determined that the defendant's § 3582(c)(1)(A) motion has demonstrated extraordinary and compelling reasons for release, it must then turn to the relevant sentencing factors set forth in § 3553(a) 'to the extent ... they are applicable.'")